[Civ. No. 1291.    Third Appellate District.—October 4, 1916.]

WESTERN NATIONAL BANK (a Corporation), Respondent, v. GEORGE W. WITTMAN, Appellant; J. G. LEIBOLD et al., Defendants and Respondents.

CORPORATION—PROMISSORY NOTE SIGNED BY PRESIDENT AND SECRETARY —SUFFICIENCY OF AUTHORIZATION.—A promissory note of a corporation signed by its president and secretary requires no ratification by the directors or stockholders, where the same was so executed in strict conformity to a resolution of the board of directors authorizing the corporation to borrow from a bank an amount of money not to exceed at any one time a certain sum, and empowering the president or vice-president, together with the secretary or treasurer, to execute its promissory note or notes therefor to such bank for all such sums so borrowed upon such terms in respect to amount or rate of interest or otherwise as might be agreed upon.

ID.—INDORSER AND GUARANTOR — SUFFICIENCY OF CONSIDERATION— —ULTRA VIRES ACT—DEFENSES NOT AVAILABLE.—An indorser and guarantor of the payment of such note cannot be heard to say that it was executed without consideration, or that it was *ultra vires*, where its genuineness was admitted by the corporation and its validity recognized by numerous payments made thereon and an acquiescence of several years.

ID.—AGREEMENT BETWEEN CORPORATION AND CREDITORS—CONDITION— GUARANTOR NOT RELEASED.—An indorser and guarantor of the payment of such a note is not released by a subsequent agreement made between the corporation and its creditors relating to a settlement of the debts of the corporation, where the agreement expressly provided that it should be void, unless signed by all creditors, and it in fact was not so signed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.    K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

J. J. Dunne, for Appellant.

Gavin McNab, B. M. Aikins, A. H. Jarman, and W. F. Williamson, for Respondent.

J. J. Lermen, for Defendants and Respondents.

CHIPMAN, P. J.—Plaintiff commenced the action by verified complaint to recover the balance due on a certain promissory note. Judgment went against defendants Geo. W. Wittman and J. G. Leibold for the sum of $7,076.82, with interest from date of the judgment and costs. Defendant vehicle company, maker of the note, did not answer.

The appeal is from the judgment and order denying his motion for a new trial by defendant Wittman alone. The promissory note in suit reads as follows:

"9000.00.                San Francisco, Cal., March 30, 1907.

"One day after date, for value received, California Vehicle & Harness Co., a corporation, organized and existing under the laws of the State of California, promises to pay to the Western National Bank of San Francisco, likewise a corporation, or order, at its banking house in this city, the sum of nine thousand 00/100 dollars in United States gold coin of the present standard, with interest thereon in like coin from date until paid, at the rate of six per cent per annum, said interest to be paid monthly, and if not so paid to be added to the principal and thereafter bear interest at the same rate. Should default be made in the payment of interest as herein provided, then the whole sum of principal and interest shall immediately become due and payable.

"(Signed)   J. G. Leibold, Pres.
"(Signed)   L. Holt, Secy."

On the back of the note is indorsed: "J. G. Leibold and Geo. W. Wittman," and then:

"San Francisco, for value received, we, or either of us, guarantee the payment of the within note and interest according to its terms, and we, or either of us, hereby waive presentation thereof to the maker, demand of payment, protest and notice of non-payment.

"(Signed)   J. G. Leibold,
"(Signed)   Geo. W. Wittman."

Stamped on the back of the note are various sums of interest and principal.

Defendant Leibold in his answer admitted, by not denying, the due execution of the note, the indorsements and guarantee and that the vehicle company received consideration for its note, but alleged want of consideration passing to him for his indorsement; denied that the whole or any part of

said note or interest is now or ever was due from this defendant.

Defendant Wittman's answer is of considerable length, a summary of which he states in his brief as follows:

"The answer denies that the corporation defendant executed the note sued on, or that it ever authorized anyone to execute that note; and alleges that the note is not and never was the note of the corporation defendant. It also denies that either Wittman or Leibold ever indorsed or guaranteed the payment of any note of the corporation defendant. It denies that no part of the principal has been paid, that the whole or any part of the principal or interest is due, owing or unpaid, and that the plaintiff is the owner or holder of the note in question. The answer then sets up as a separate defense that the note is *ultra vires* and void, because issued by Leibold and his secretary, Laura Holt, to take up a private and personal indebtedness of Leibold to the plaintiff corporation, without authority from or ratification by the board of directors of the defendant corporation, all to the knowledge of the bank. It further sets up, as an additional separate defense, that no consideration for this note ever passed to the corporation defendant. It further sets up, as an additional separate defense, the fraud of the plaintiff and of Leibold in inducing the defendant Wittman to go upon the note, and it further sets up as an additional separate defense, under section 2819 of the Civil Code, the execution of a contract without the consent of the defendant Wittman, he being unindemnified, which contract suspended the plaintiff's rights and remedies against the defendant corporation."

It appeared that prior to March 23, 1907, defendant Leibold was engaged in business in San Francisco under the name of Leibold Harness Company, and was indebted to plaintiff in the sum of nine thousand dollars, evidenced by Leibold's promissory note. On that day defendant, the vehicle company, was incorporated by three persons, one of whom was in Leibold's employment. Neither Wittman nor Leibold was then a corporator. After this date and prior to the execution of the note sued upon, Leibold transferred his business to the vehicle company and the latter assumed all the liabilities of the Leibold Harness Company, including the bank indebtedness of nine thousand dollars, and agreed to and did issue a block of the stock of the vehicle company

to Leibold as consideration for his business. Leibold was then made a director and president of the corporation and defendant Wittman, having invested some money therein, became a stockholder in and was made vice-president of the corporation. Thereafter Leibold, on behalf of the corporation, applied to plaintiff for a loan of nine thousand dollars, and was told by an officer of the bank that the corporation would have to execute its note for the loan, which must be indorsed by the principal stockholders. On March 30, 1907, at a meeting of the board of directors of the corporation defendant, held at its office, all directors and the secretary, L. Holt, being present, defendant Wittman offered and defendant Leibold seconded a resolution which was adopted, authorizing the corporation to borrow from the Western National Bank an amount of money not to exceed at any one time the sum of nine thousand dollars, "and that either the president or vice-president, together with the secretary or treasurer of this corporation are hereby empowered to execute its promissory note or notes therefor to said Western National Bank of San Francisco, for all such sums so borrowed, upon such terms in respect to amount or rate of interest or otherwise as may be agreed upon." The resolution directed the secretary to deliver to said bank "a copy of these resolutions properly certified by her in evidence of the authority of the persons hereinbefore named to make said loans and execute the notes as above specified." A duly certified copy of this resolution was delivered to plaintiff, the promissory note above set out was also delivered to and accepted by the bank and the amount, nine thousand dollars, placed to the credit of the vehicle corporation, in its regular checking account. Later, on April 3, 1907, the corporation drew its check for nine thousand dollars and paid the note of said Leibold, which had been assumed by the corporation. This note of the corporation is the obligation which appellant Wittman now contends was not authorized or executed by the vehicle corporation, and is the note on which it subsequently paid various sums of both principal and interest, and is the note for the unpaid balance of which this action was brought.

Section 2792 of the Civil Code provides that no other consideration need exist "where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms with that

obligation a part of the consideration to him." Section 2806 of the same code provides that: "A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor." Section 3116 provides that: "Every indorser of a negotiable instrument, unless his indorsement is qualified, warrants to every subsequent holder thereof, who is not liable thereon to him: First. That it is in all respects what it purports to be. Second. That he has a good title to it. Third. That the signatures of all prior parties are binding upon them." Fourth: That if dishonored, the indorser will pay the same unless exonerated under certain provisions of the code not here applicable.

Appellant contends that the note sued on is invalid and void for many reasons: (a) Because, though signed by the president and secretary, their acts were never authorized or ratified by the directors or stockholders; (b) because contrary to public policy declared in section 2228 et seq., of the Civil Code; (c) the note is not evidentiary of any consideration flowing from the bank to the vehicle company.

The note in question was authorized by the unanimous vote of the directors. No ratification was necessary. It was executed in strict conformity to the resolution passed by the directors, and the money derived from the loan was placed to the checking account of defendant corporation and was used in the payment of an obligation assumed by the corporation as part consideration for the business and property conveyed to it by Leibold. As the governing body of the corporation, the directors were the persons and only persons who, in their official capacity, could execute the note. Sued as he was in his individual capacity, and being both an indorser and guarantor of the note in such capacity, appellant will not be heard to do the very things which the code sections, *supra,* say he may not do. We can discover no principle of public policy violated in the transaction, nor can we see that there was a failure to show consideration flowing to the vehicle corporation. Aside from the presumption of consideration arising where the obligation is in writing, and aside from the provisions of the code, *supra,* there was a consideration in that the money received for the note was subsequently used to pay an obligation of the corporation. The genuineness of the corporation note was never questioned by the corporation and is here admitted. The corporation recognized its validity by

numerous payments made on the note and by an acquiescence of several years. Neither can we see that appellant has established his claim that the note was *ultra vires* in the sense that it was beyond the power of the directors to bind dissenting stockholders or of the legal rights of creditors. The articles of incorporation empowered the corporation, among other things:

"1st. To manufacture, buy, sell, import, export and generally deal in all kinds of harness, saddlery . . . and all goods, wares and merchandise, etc. . . .

"4th. To borrow and lend money, etc. . . .

"6th. To receive, hold, store, buy and sell and generally deal in goods, wares and merchandise of any kind, etc."

The corporation was formed to conduct the same kind of business which, with the property forming part of it, Leibold conveyed to the corporation. There was express authority given by the articles to transact this business, and part of its business was to pay its obligations assumed in consideration for the property it received from Leibold. There were no dissenting stockholders or directors at the time the note was executed nor for some months thereafter, and there is none now so far as we know except defendant Wittman, and he it was who moved the resolution authorizing the note to be executed, and who guaranteed its genuineness and that he would pay it if the corporation did not. Furthermore, Wittman testified that he knew, or supposed, that the note was delivered to the bank; that the corporation received credit for it and "understood that they took up that old note with this new one."

It was legal for the parties, in forming the corporation, to exchange its stock for the property conveyed to it by Leibold. (*Turner* v. *Markham,* 155 Cal. 562, [102 Pac. 272].) Having taken over the harness business of Leibold for the purpose of conducting it, and having assumed his liabilities connected with that business, it was as much within its power to pay its debts as to conduct the business for which it was formed.

It is further contended that Wittman was discharged by reason of a certain agreement which it is claimed was entered into in February, 1908, between the vehicle corporation, its creditors and Leibold. This agreement purports to be "between the California Vehicle & Harness Company, a California corporation, party of the first part, and the under-

signed creditors of the said corporation, parties of the second part, and J. G. Leibold, of the City and County of San Francisco, California, party of the third part.'' By its terms, the first party conveyed to the third party the property of the first party in trust to collect the accounts of the corporation, to sell and dispose of the stock of goods on hand, to purchase such additional goods as were necessary for carrying on the said business, to render an account monthly of receipts and disbursements. ''As soon as said party of the third part has in his hands sufficient funds wherewith to do so, a dividend of ten (10) per cent shall be made to each one of the parties of the second part, upon the amount of their respective claims; providing, however, the interest on said claims shall be kept paid according to the terms of the respective existing contracts. . . .

''This agreement shall be void and of no effect unless the same be executed by all of the creditors of said corporation as the parties of the second part hereto.''

The court found among other facts, in respect of the agreement: ''That it is not true that during the operation of said agreement the plaintiff's rights in respect of its original obligation sued on in this action, should cease and become suspended; that it is not true that said agreement was entered into against the will of said defendant Wittman; and in respect to the agreement, mentioned and referred to in paragraph IX of the answer of said defendant Wittman, the court finds that a certain agreement was drawn and was attempted to be executed by said California Vehicle & Harness Co. and all its creditors, and that said agreement was signed by plaintiff; that said agreement specifically provided as follows, to wit: [Then follows the clause above quoted requiring all the creditors to sign.] That said agreement was not signed by all of the creditors of said California Vehicle & Harness Co. and said agreement was never executed and did not become operative.''

The evidence supported this finding. But it is contended that because plaintiff signed the agreement and received payments claimed by appellant to have been made under this agreement, plaintiff is bound by it. There was evidence that a payment of nine hundred dollars was made in June, 1908, shown by the indorsement on the note as on account of the principal, and this was exactly ten per cent of the face of

the note. Whether or not it was received under the agreement did not appear, except by the fact that Leibold paid it to the bank while acting under the agreement, and by the circumstance that it was ten per cent of the principal of the note. The only officer of the bank called as a witness by defendant, testified: "Q. I will ask you if it is not a fact that the bank did accept payments from Mr. Leibold on the note under that agreement? A. I could only say now after seeing the note that payments were made to the bank. By whom they were made and under what circumstances, I could not say."

Cases such as *Daneri* v. *Gazzola,* 139 Cal. 416, [73 Pac. 179], cited by appellant, do not support his contention. In the case cited, the defendants were sureties on the note; the payee agreed in consideration of part payment and that the interest would be kept paid as it matured, to dismiss the action and extend payment one year. This agreement was carried out without the consent or knowledge of the defendants. The court held that this operated a release of the sureties. No such facts exist here. Assuming that the agreement took effect, it was merely an arrangement by which Leibold was to manage the business and pay the obligation when he could out of the earnings. No time was fixed for payments, and no extension of time given by the creditors, and there was no consideration passing to plaintiff as a creditor for the agreement. It was said in *Stroud* v. *Thomas,* 139 Cal. 274, [96 Am. St. Rep. 111, 72 Pac. 1008]: "A surety is not discharged by an extension of time to the principal debtors without consideration. Part payment of the interest or principal of a note after maturity is not a consideration for an extension of time; and the surety is not discharged by an agreement to forbear suit against the principals, founded upon such part payment, though carried out by the creditor."

Under sections 2822 and 2823 of the Civil Code, mere delay on the part of the creditors to proceed against the principal does not exonerate the guarantor, and a partial satisfaction of the obligation of the guarantor will reduce it, but will not otherwise affect the obligation.

We think, however, that as by the express terms of the agreement it was to be null and void unless all creditors signed it, the court rightly held that it never became operative.

We discover no alleged errors in rulings of the court during the trial which were prejudicial or call for consideration. The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.